664 P.2d 661

The STATE of Arizona, Appellee,

v.

Gary Lindell POLITTE, and Michael Jay Zucker, Appellants.

Nos. 2 CA–CR 2530, 2 CA–CR 2566–2.

Court of Appeals of Arizona, Division 2.

Dec. 30, 1982.

Rehearing Denied April 4, 1983.

Review Denied May 24, 1983.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Tucson, for appellee.

Thomas G. Kelly, III, Tucson, for appellant Politte.

Stolkin & Weiss, P.C. by Stephen M. Weiss and Nat Schaye, Tucson, for appellant Zucker.

## OPINION

BIRDSALL, Judge.

The appellants Gary Lindell Politte and Michael Jay Zucker were tried together on multiple counts against each. Politte was convicted of 5 counts of unlawful sale of a narcotic drug having a value of not less than $250, one count of sale with a value less than $250, one count of offer to sell and conspiracy to commit a class 2 felony (narcotics offenses). Zucker was found guilty of the conspiracy and one count of sale of narcotics with a value not less than $250. Multiple other counts charging Zucker with narcotics offenses were dismissed for insufficient evidence at the close of the state's case. Both appellants were sentenced to prison terms. We affirm.

There were other defendants indicted with these two appellants. Except for one, Lisa Auletta, non-trial dispositions were made as to all of them. Auletta was promised before trial that even if she was found guilty the state would, at some point, permit her to plead to a probation offense. She remained a defendant throughout the presentation of the state's case after which the state honored its promise and the charges against her were not submitted to the jury.

The appellants present only one common issue on appeal, that the admission of Lisa Auletta's declarations under the co-conspirator exception to the hearsay rule denied them their constitutional right to confront the witnesses against them inasmuch as defendant Auletta would have been available for cross-examination had the state entered into a plea agreement with her before appellant's trial rather than after the close of evidence. This is the only issue raised by Politte. We will consider this common issue first and then turn to the issues presented by Zucker.

The facts pertinent to our disposition of this appeal are contained in our discussion of the issues.

*Sixth Amendment Confrontation Right*

Out-of-court statements of the co-defendant and alleged co-conspirator, Lisa Auletta, were admitted in evidence over objection. These statements implicated both appellants in the conspiracy. They were not hearsay. Rule 801(d)(2)(E), Arizona Rules of Evidence, 17A A.R.S.[1] The statements were thus admissible unless rendered inadmissible for other reasons. The appellants contend that the admission of these statements violated their Sixth Amendment right to confrontation, *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). They assume that before these statements are admissible it is necessary that the declarant be "unavailable" to testify. Relying upon this premise, the appellants make a lengthy and involved argument that the state made the witness unavailable by delaying her plea to a "probation available" offense until after the trial. The state likewise makes an equally

---

1. A statement is *not* hearsay if offered against a party and it is a statement made by a co-conspirator of a party during the course and in furtherance of the conspiracy.

long and involved argument in which it asserts its right to control the timing of such a plea so that the declarant will not be "available" to possibly testify falsely exonerating the co-defendant. There is no "unavailability" requirement in the rule and we find none in those decisions which permit a co-conspirator's statements. *Dutton v. Evans, supra; State v. Ferrari,* 112 Ariz. 324, 541 P.2d 921 (1975). The principle upon which the admission of such statements rests is that a conspirator is not only liable for the acts of a co-conspirator but is likewise bound by the declarations of the co-conspirator. 4 Wigmore, Evidence Sec. 1079(1), (Chadbourn Rev. 1972).

The appellant Zucker urges the following additional issues:

1) The Auletta statements were unreliable;
2) His instruction on facilitation should have been given;
3) His trial should have been severed;
4) Sufficiency of the evidence;
5) Is the Arizona wiretap statute unconstitutional?;
6) Was the wiretap evidence admissible?

### Reliability

■ Again both the appellant and the state have made extended arguments pro and con on the reliability of the declarant's statements. The trial court, after an extensive hearing, found that they were reliable. Our own review of the record supports this finding. The evidence fell within the firmly rooted evidentiary rule allowing a co-conspirator's statements, *see Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and reliability can be inferred. The appellant's arguments on this issue go to the weight rather than the admissibility of the evidence, as, for example, that the declarant would have a motive for lying. We see no need for detailed discussion of reliability.

### Facilitation

■ The appellant Zucker requested that an instruction on the crime of facilitation, A.R.S. § 13–1004[2] be given, claiming it was a lesser included offense of the sale charge. Although the facts here may have supported a conviction for facilitation, that was not the charge. The charge of unlawful sale against the appellant was on the theory of aiding and abetting, and the evidence justified his conviction on that theory. The appellant is not entitled to an instruction on another offense even though he might have been charged with and convicted of that offense. *State v. Teran,* 130 Ariz. 277, 635 P.2d 870 (App.1981). Facilitation is not a necessary included offense of unlawful sale since the sale can be committed without necessarily committing facilitation. *See State v. Harris,* 134 Ariz. 287, 655 P.2d 1339 (1982).

### Severance

■ The appellant presents three reasons for finding the trial court erred in denying his several motions for severance. We discuss them in order.

### Antagonistic Defenses

■ The co-defendant Auletta's participation was for all practical purposes admitted and her counsel's opening statement, her major participation in the trial, sounded in entrapment. On the other hand the appellant's defense was insufficiency of the state's evidence against him. Although our Supreme Court has said that "it is generally held that separate trials should be allowed where the defenses of several defendants ... are antagonistic," *State v. Escherivel,* 113 Ariz. 300, 552 P.2d 1194 (1976), it was not necessary to that decision since there the motion to sever was untimely and its denial was not error for that reason. The authority cited, 70 A.L.R. 1184, has been

2. "A person, other than a peace officer acting in his official capacity within the scope of his authority and in the line of duty, commits facilitation if, acting with knowledge that another person is committing or intends to commit an offense, such person knowingly provides such other person with means or opportunity for the commission of the offense and which in fact aids such person to commit the offense."

superseded in 82 A.L.R.3d 245. In this later annotation we find that, although such a ground for severance is recognized, reversible error is found only in the presence of strong and cogent reasons. Also, there is reputable authority for the proposition that actual prejudice must be shown in addition to the antagonistic defenses. 82 A.L.R.3d 258. In the instant case the defenses are not necessarily antagonistic, and no prejudice has resulted. The co-defendant's virtual admission, through counsel, is only as to her involvement in the narcotics offenses, an admission which could hardly be avoided given the evidence against her. The jury could believe she was entrapped, if that became her actual defense, by the undercover officers and still find that the appellant was not involved, or that the state had failed to prove his involvement. These defenses are not conflicting and irreconcilable. There has been no prejudice since all of the evidence against Auletta would be admissible in a separate conspiracy trial of the appellant. Entrapment and non-involvement have been held not to be antagonistic in multiple member conspiracy cases. *See United States v. Morrow,* 537 F.2d 120 (5th Cir.1976), requiring a showing of compelling prejudice arising out of the inconsistency, and *United States v. Garza,* 563 F.2d 1164 (5th Cir.1977), cert. denied, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978).

### Unavailability of Auletta

██ This is the argument to which we previously have made brief reference. We agree with four compelling arguments made by the state: 1) the state has the right to control when a plea will be entered; 2) the co-defendant, not the state, made herself unavailable by invoking her Fifth Amendment right to remain silent, 3) the entry of a plea and even the resulting judgment and sentence would not make the witness available if she still chose not to testify and 4) there is no showing what her testimony would be, and there is reason to believe it would not be favorable. Our court has previously rejected arguments similar to the appellant's. *See State v. Rivera,* 124 Ariz. 123, 602 P.2d 504 (App.

1979). The privilege granted by the Fifth Amendment applies throughout any appeal. *State v. Gretzler,* 126 Ariz. 60, 612 P.2d 1023 (1980). Before the claim of non-availability can be considered reversible error, there must be a showing that the testimony of the witness would be favorable. *United States v. Vigil,* 561 F.2d 1316 (9th Cir.1977); cf. *United States v. Valenzuela-Bernal,* —— U.S. ——, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

### Rub-off

██ The last reason urged as error in the denial of severance rules on *United States v. Kelly,* 349 F.2d 720 (2nd Cir.1965), cert. den. 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966), i.e., that since the evidence was stronger as to the other two defendants, this rubbed off on Zucker. He was thus found guilty by association. Our analysis of the record convinces us that the appellant Zucker was the "head" of the conspiracy, the money man, the "brains." Since the other defendants were "at the front" they were necessarily more visible. This should not be a reason for applying *Kelly.* That would be a travesty. We have no doubt that *Kelly* is inapposite under the facts of this case where there are only three defendants, the facts are relatively simple and most of the evidence would have been admissible in a separate Zucker trial.

There was no error in the denial of the severance motions. To the contrary, the defendants were properly tried together.

### Sufficiency of the Evidence

██ We must consider the record in the light most favorable to sustaining a conviction. *State v. Silvas,* 91 Ariz. 386, 372 P.2d 718 (1962). With this standard in mind we find the trial court properly denied the appellant's motions for acquittal on the conspiracy and August 13 sale count. There was competent evidence to submit the question of Zucker's guilt to the jury and for the jury verdicts. *State v. Toney,* 113 Ariz. 404, 555 P.2d 650 (1976). Among the facts which we find significant are that the illicit

drug trade was conducted both from his home and from his place of business; he was a cocaine user; drug paraphernelia was observed in his home on July 13 and still found there on November 20; he was present at the time and place of the August 13 sale and watched it "come down"; the co-defendant Politte was his employee at the Night Train Bar and lived with him; his telephones were used to negotiate drug deals and he attempted to negotiate a sale in one of the intercepted phone conversations. We reject appellant's contention that the evidence was insufficient.

### The Arizona Wiretap Statute

The appellant contends that his convictions must be reversed because evidence of his crimes was secured in part by means of a court-authorized wiretap on his telephone. This evidence was used in part to secure the search warrant of his property and some of the intercepted conversation was admitted in evidence. His contention on appeal is that the Arizona statute is invalid and unconstitutional since the federal government has preempted this field, and that any state statute purporting to authorize wiretap orders is invalid if it is "less restrictive" than the federal law. He contends the Arizona statutes, A.R.S. §§ 13–3001, et seq., principally § 13–3010, are less restrictive in at least six areas and are therefore unconstitutional.

The state's first answer to this contention is that since it was not raised in the trial court it cannot now be considered on appeal. Although we recognize that a failure to raise an issue in the trial court may preclude its consideration on appeal, even if a constitutional question is presented, *State v. Tison,* 129 Ariz. 526, 633 P.2d 335 (1981), we nevertheless believe that we should consider the appellant's contentions here since substantial rights of a fundamental nature are involved which could have resulted in severe prejudice to the appellant. *See United States v. Tortorello,* 480 F.2d 764 (2nd Cir.1973); *State v. Verive,* 128 Ariz. 570, 627 P.2d 721 (App.1981); *State v. Sepulveda,* 120 Ariz. 178, 584 P.2d 1169 (1978).

Also the question presented is one of law and does not require evidentiary support, *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), and the issue presented is one of general, broad concern. *State v. Junkin,* 123 Ariz. 288, 599 P.2d 244 (App.1979), cert. denied, 444 U.S. 983, 100 S.Ct. 489, 62 L.Ed.2d 411 (1979). The question presented by the appellant will probably be urged by other able counsel if not answered here since it does appear that under the law in at least the state of Kansas the appellant might prevail.

The appellant asserts that the following constitute disparities between the federal law found in 18 U.S.C. 2510 et seq. and the Arizona statutes. His assertions are:

"1.  18 U.S.C. § 2518(9, 10) sets forth an exclusionary rule applicable to all hearings and proceedings in which a wiretap was conducted in violation of statutes or the Constitution, or where intercepted communications are not disclosed 10 days prior to any hearing or proceeding. Arizona has adopted no comparable statute.

2.  Both 18 U.S.C. § 2518(8)(a) and A.R.S. § 13–3010(H) require an immediate return of all recordings to the issuing court so that they may be sealed. Arizona's statue · [sic] stops there, while the federal law goes on to state that an improper seal renders the contents of the intercepted communications and all derivative evidence inadmissible in all proceedings. The federal law also provides for the custody and preservation of recordings; this provision is absent from the Arizona statute.

3.  18 U.S.C. § 2518(2) authorizes the issuing judge to require "additional testimony or documentary evidence in support of the application" prior to rendering a decision on the issuance of a wiretap order. No such authority is granted by Arizona law.

4.  18 U.S.C. § 2518(8)(c) authorizes the issuing judge to hold in contempt any person who violates the restric-

tions on the proper execution of wiretap orders. The Arizona statutes contain no such authorization.

5. 18 U.S.C. § 2511(f) provides for a sentence of five years in prison for anyone illegally attempting to intercept, intercepting, using or disclosing information obtained from an oral, wire or radio communication. A.R.S. § 13–3006 provides criminal sanctions only for actual interceptions of telegraphic or telephonic communications. Such violations are deemed Class 6 felonies, punishable by 1½ years in prison. *See* A.R.S. § 13–701(B)(5).

6. 18 U.S.C. § 2520 specifically provides civil remedies for violations of Title III. These include: a) actual damages in an amount of not less than $100.00 for each day of violation, or $1,000.00, whichever is greater; b) punitive damages; and c) attorney's fees. There is no similar Arizona statute."

He claims these disparities are less restrictive than the federal law contrary to the intent of the Congress as contained in Senate Report No. 1097, 90th Cong.2d Session, U.S.Code Cong. & Admin.News, pp. 2112, 2187 (1968):

"No applications may be authorized unless a specific state statute permits it. The state statute must meet the minimum standards reflected in the proposed chapter. The proposed provision envisions that states would be free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation."

The appellant then asserts that the courts of several of our sister states have addressed the issue of preemption, and that the leading decision is *State v. Farha,* 218 Kan. 394, 544 P.2d 341 (1975), cert. denied, 426 U.S. 949, 96 S.Ct. 3170, 49 L.Ed.2d 1186 (1976). It is indisputably true that the Kansas court in that decision, as well as in a later one, *State v. Dowdy,* 222 Kan. 118, 563 P.2d 425 (1977), struck down as unconstitutional the Kansas wiretap statutes. It is

also correct that the Kansas court, in each of these cases, reasoned that since Kansas had adopted a statute with more permissive standards than the federal law, the state statute was invalid. The *Farha* court held: "If a state wiretap statute is more permissive than the federal act, any wiretap authorized thereunder is fatally defective and the evidence thereby obtained is inadmissible under 18 U.S.C. § 2515." We do not agree with the reasoning or holding of the Kansas court.

After understandably expressing great reliance on *Farha,* the appellant then cites the decisions of several other states which he asserts are "in accord." Our examination of each of these cited authorities discloses that none of them involve a finding that a state wiretap statute is unconstitutional on the grounds of preemption or for any other reason. We will examine each of these decisions.

*State v. Siegel,* 266 Md. 256, 292 A.2d 86 (1972), held the Maryland wiretap statute constitutional despite an attack, in part, on the same theory advanced here. The Maryland court's answer to the question is "whether each of their terms [the federal vs. the state provision] relating to the application or grant of an order is constitutional *vel non* is of no consequence. Once the hurdle of finding an applicable Maryland law authorizing interception is overcome, compliance must be had with whichever law is more constricting, be it federal or state." We agree with that reasoning.

*State v. Daniels,* 389 So.2d 631 (Fla.1980), involved the question of whether a general statute providing that an assistant state attorney have all powers of the state attorney appointing him was sufficient to authorize an assistant state attorney to apply for a wiretap order under a state wiretap statute which did not specify the assistant as an official having such authority. The court found the order issued on the application of the "assistant" to be invalid. The case has no significance in the instant case except to note that the entire state statute was not invalidated.

*State v. Williams,* 94 Wash.2d 531, 617 P.2d 1012 (1980), involved a provision in the Washington statute requiring prior judicial approval to record a conversation even where one of the parties consents, a provision more strict than federal law. The case simply holds that the wiretap procedure must comply with the state statute since it is more restrictive.

The only question really decided in *State v. Mayes,* 39 Md.App. 635, 387 A.2d 794 (1978), aff'd 284 Md. 625, 399 A.2d 597 (1979), was that the presentation of wiretap evidence to a grand jury of crimes other than those enumerated in the application and order, without first making application to the court as provided in Sec. 2517(5), 18 U.S.C., required dismissal of the indictments. The subject of preemption is not discussed.

*United States v. Tortorello, supra,* involved the constitutionality of the federal act authorizing the states to enact their own wiretap authorization statutes. While holding the federal act constitutional the court held that if orders issued by the state judge (New York) did not comport with requirements of the federal act then the evidence would not be admissible in the resulting federal prosecution. Again, we agree with that logic.

On the other hand, the state has referred us to *Commonwealth v. Vitello,* 367 Mass. 224, 327 N.E.2d 819 (1975) which, unlike the Kansas decisions, reasons that even though there are differences in the federal and Massachusetts statutes, as long as the state statute is in substantial compliance with the federal it will not be held invalid. The opinion states that the provisions challenged there relate generally to:

" . . . (1) the authority of assistant district attorneys to apply for wiretap orders; (2) the requirement that the wiretap order be proved necessary in that other investigative procedures have been tried and failed; (3) requirements that the order identify the agency authorized to intercept, contain statements providing that it be executed as soon as practicable, and be conducted in such a way as to minimize

the interception of communications; (4) the provision for recording, sealing of tapes, and the serving of notice and inventory; and (5) designated offenses for which a wiretap order may be obtained."

Although finding that some of these alleged differences were non-existent, the Massachusetts court also found that as to the differences which were actually present the state statute was either sufficiently compatible with the federal or, as to others, the statute as a whole would ensure sufficient compliance with the federal standards; and as to still other differences that they were ministerial or reporting requirements which would not lead to preemption even if different than the federal law.

■ The same dispositions apply to all of the appellant's arguments concerning deficiencies in the Arizona statutes save only that the Arizona statutes do not include an exclusionary rule. We will discuss this disparity infra. Considering first the other differences, we begin with the claims that the Arizona statute does not contain a provision excluding the wiretap evidence if it has not been sealed, 18 U.S.C. 2518(8)(a), and that there is no Arizona provision for the custody and preservation of the recordings of the intercepted material. The Arizona statute, A.R.S. § 13–3010(G) does provide, in part, that all applications and orders shall be "sealed by the judge" and custody "shall be wherever the judge directs." Likewise subparagraph (H) provides that all recordings shall be sealed under directions of the judge. It is obvious that the sealing and custody provisions have as their purpose the preservation of the materials in order to prevent alterations. This is not a requirement which "directly and substantially implement[s] the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). We do not believe it is necessary that a state statute mirror the federal law by establishing an absolute evidentiary rule making the admission of au-

thorized wiretap evidence depend on the sealing requirement. *See also United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977); *United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974).

■ The appellant next complains that the Arizona statutes omit any provision authorizing the judge to whom an application is presented to require additional evidence before authorizing the interception. *See* 18 U.S.C. 2518(2). This argument approaches frivolity. The Arizona statute requires a showing on the basis of facts submitted by the applicant that:

"1. There is probable cause to believe that an individual is committing, has committed, or is about to commit a particular crime included within subsection A.

2. There is probable cause to believe that particular communications concerning that offense will be obtained through such interception.

3. Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.

4. There is probable cause to believe that the facilities from which, or the place where, the wire or oral communications are to be used, in connection with the commission of such offense, or are leased to, listed in the name of or commonly used by such person." A.R.S. § 13–3010(C)(1–4)

If any of these determinations are not made no order will issue. We entertain no doubt that the judge can ask questions and request additional information. In fact it is beyond our imagination that any judge would believe he could not. The issuing judge in this case was both given an opportunity to, and did, interrogate the officers.

■ The last three differences between the federal and Arizona statutes set forth by the appellant concern only possible contempt citations and criminal violations or civil penalties for a party violating provisions of the statutes. The fact that these provisions in our state law are different or

do not exist does not play a central role in guarding against the unwarranted use of electronic surveillance. The appellant does not argue that disobedience of an order made in connection with a wiretap proceeding could not be contemptuous. He recognizes that Arizona does provide criminal sanctions for unauthorized interceptions and that remedies are available for civil rights violations by reason of 42 U.S.C. 1983.

■ Turning now to the lack of a specific exclusionary rule in the Arizona statutes, the omission does not invalidate the Arizona wiretap laws. To this extent the federal code is self-executing. The federal exclusionary rule, found in 18 U.S.C. 2515, provides:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, *a State,* or a political subdivision thereof if the disclosure of that information would be in violation of this chapter." (emphasis supplied)

Thus a violation of the federal statutes prohibits the admission of the evidence in state proceedings. This is precisely what occurred in *State v. Dwyer,* 120 Ariz. 291, 585 P.2d 900 (App.1978). *And see State v. Ford,* 108 Ariz. 404, 499 P.2d 699 (1972), cert. denied, 409 U.S. 1128, 93 S.Ct. 950, 35 L.Ed.2d 261 (1973). The appellant here did move to suppress the wiretap evidence basing his motion on grounds other than the preemption argument which he makes now. If the trial court had found these grounds meritorious the evidence would have been excluded. Two of these grounds are still presented in this appeal: that normal investigative procedures had not been exhausted and that no probable cause existed. We have yet to consider these issues in this opinion. It is obvious that the appellant's

position, both in the trial court and on appeal, is that the wiretap evidence should have been excluded. We find this argument inconsistent with his argument that Arizona does not have an exclusionary rule. We hold the Arizona wiretap statutes withstand the claim of preemption and are not unconstitutional.

We next consider the contention that the law enforcement officers failed to exhaust all available investigative techniques before resorting to the application pursuant to A.R.S. § 13–3010 (the wiretap). The statute, subparagraph C, provides, in part, that before an ex parte wiretap order may be entered the judge must determine that "3) normal, investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

As the appellant argues, wiretaps are not to be authorized where traditional investigative techniques will "solve the crime." *United States v. Kahn,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974); *United States v. Chavez, supra; United States v. Giordano, supra; State v. Hale,* 131 Ariz. 444, 641 P.2d 1288 (1982). In order to satisfy this requirement the affidavit supporting the application must state facts from which the issuing judge can make this necessary determination. Conclusionary statements are not sufficient. *State v. Hale, supra.*

The appellant makes two arguments in support of his position that the affidavit here did not warrant the issuing judge's finding that the use of the wiretap was necessary. First, he argues that the investigation must be unusual, citing *United States v. Kalustian,* 529 F.2d 585 (9th Cir.1975). He contends, of course, that this case was not. *Kalustian* does not stand for the proposition that this claimed requirement is to be considered separate and apart from the requirements codified in the statute. In *Kalustian* the affidavit was found to be insufficient because it did not adequately show why traditional investigative techniques were not sufficient in that gambling investigation. The opinion states that it was insufficient just to show that gambling was the subject of the investigation and that gambling cases are difficult to solve. Thus in the instant case it would not have been sufficient to show that this was a narcotics conspiracy and that such crimes are difficult to solve.

The major thrust of the appellant's argument on this issue is to disagree with the conclusions either made in the affidavit or implicit in the findings of the experienced superior court judge who issued the wiretap order. These conclusions and findings are based on certain articulated facts contained in the affidavit. This is clearly not a situation where the judge merely served as a rubber stamp for the police. *See United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The appellant contends that four normal investigative techniques were not exhausted: 1) undercover operations, 2) informants, 3) surveillance, and 4) pen registers.

Undercover operations were the technique most extensively employed in this investigation. The facts shown by the affidavit were that after the first information came to their attention from an undisclosed informant, a former bouncer at the Night Train Bar, an undercover officer was introduced to Auletta by that informer. This was on June 26, 1979. The officer, posing as a buyer from California, was successful in arranging buys from Auletta who told him almost immediately that her sources were the appellants, Zucker and Politte. By July 5 he learned Zucker's residence address and a surveillance was established there. He also learned that Politte lived with Zucker and was employed as Zucker's manager at the bar. He first met Politte on July 11 and then observed that he was somewhat paranoid about possible detection of their criminal activity. His undercover work took him to the bar on several occasions where he was able to observe first hand that the narcotics business was transacted in an office room separated from the bar itself. He first met Zucker in the early morning on July 13. On that occasion both appellants used cocaine in his presence. On

that same day he got inside the residence where he observed scales, packaging materials and narcotics paraphernalia on a table in the center of the living room. It was at this time that Politte told him he wanted to cut Auletta out of future transactions. A total of $5,985 was spent on the purchase of cocaine up to July 24 when the wiretap application was approved by Judge Buchanan.

During the course of the investigation the records pertaining to the license for the bar were examined, revealing, in part, that a Tucson attorney was supposedly Zucker's partner in the bar business. The attorney knew the undercover officer and would have been able to recognize him. The surveillance at the residence had aroused the suspicion of neighbors who feared criminal activities and regular police officers had been called to patrol the area. Much of the 25-page affidavit is devoted to the exhaustion of these investigative techniques and the improbability of further success. It must be remembered that no procedure had yet suggested the sources of Zucker's narcotics or the identity of other buyers. This information was the object of the wiretap.

■ The appellant argues that the danger of recognition of the undercover officer by the attorney-partner or customers of the Night Train was either remote or insincere. There were sufficient facts for the judge to determine otherwise. He also argues that the co-defendants could be used to learn the source or that the undercover officer could order a large quantity and insist on meeting the source. These arguments are hindsight and either procedure would involve dangers which the law does not require. Both the federal law and Arizona statutes expressly recognize this. The officer's conclusion that at the stage which the investigation had reached it would be dangerous for him to attempt any more than one additional buy, has to be tested in a practical and common sense fashion. See In Re Dunn, 507 F.2d 195 (1st Cir.1974). Likewise the appellant's argument that the officer acted too quickly in seeking the wiretap authorization is answered in the same way. The

issuing judge is given discretion and this court should not invalidate an order or interpose our judgment where there are sufficient facts to support his decision. United States v. Ventresca, supra; In Re Grand Jury Investigation of Giancana, 352 F.2d 921 (7th Cir.1965), cert. denied, 382 U.S. 959, 86 S.Ct. 437, 15 L.Ed.2d 362 (1965).

In his affidavit the officer explained other problem areas that led him to the belief that normal procedures could not be further pursued. For example, if Auletta was cut out he would be dealing directly with Politte and for that reason he might have to "sample" the cocaine. He also cited the expense of continued purchases. The appellant simply disagrees. This disagreement does not give cause for us to second guess the superior court judge. See United States v. Martin, 599 F.2d 880 (9th Cir. 1979).

■ The appellant's argument that other arrestees (there had been no less than 15 from the bar) might be used as informants, is speculative. The officers are not required to pursue every other possible device before resorting to electronic surveillance. United States v. Daly, 535 F.2d 434 (8th Cir.1976); United States v. Bailey, 607 F.2d 237 (9th Cir.1979), cert. denied, 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980). The investigation which preceded the application in the instant case showed that the telephone was used extensively to conduct the illegal business. This, no doubt, influenced the officers to make the application and gave probable cause to believe it would be used in the future and would lead to both the source of the narcotics and the identity of other buyers. Although the authorities disapprove the routine use of a wiretap as the first step in a criminal investigation, United States v. Giordano, supra, nevertheless where it can be conclusively shown, as here, that ongoing criminal activity exists, the employment of the procedure most likely to succeed at an early time can hardly be criticized. Not only was the investigation successfully concluded, the criminal activity was terminated.

■ We make the same disposition of the appellant's other arguments that con-

tinued surveillance might have proven successful, and that a pen register was not utilized. The issuing judge had before him an affidavit with sufficient reliable information to conclude that the order was warranted. The statutes do not mandate the indiscriminate pursuit of every non-electronic device. *State v. Hale, supra.* It does not follow that merely because a normal investigative technique is theoretically possible, it is likely to succeed. *See Giancana v. United States, supra.*

The appellant's final argument is that no probable cause existed to believe that the residence phone would be used in the future illicit activities enumerated. No calls were shown directly to have been made to a source from the residence. From what we have already set forth it must be obvious that inferences can be drawn that both Politte and Zucker would use that phone to contact their source. The phone was repeatedly used during the undercover transactions; there were references to "calling my source." Probable cause was amply established.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.