670 P.2d 411

**The STATE of Arizona, Appellee,**

v.

**Frederick Addison FLETCHER, Appellant.**

**No. 2 CA–CR 2746.**

Court of Appeals of Arizona, Division 2.

May 17, 1983.

Rehearing Denied July 7, 1983.

Review Denied Sept. 9, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Frank P. Leto, Tucson, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant was tried to a jury and convicted of one count of fraudulent scheme and artifice and one count of attempted fraudulent scheme and artifice in violation of A.R.S. §§ 13–1001 and 13–2310. The alleged fraudulent scheme involved the sale of purportedly illicit drugs to a DEA agent in June of 1981. Imposition of sentence was suspended and appellant was placed on probation for seven years.

The questions for our consideration on appeal are whether the trial court abused its discretion (1) in precluding appellant from inquiring into prior bad acts allegedly committed by the state's informant, and (2) in admitting statements under the co-conspirator exception to the hearsay rule. We affirm.

A brief factual background discloses that on June 11, 1981, Thomas Childers, a special agent for the Department of Justice received from a confidential informant, Blaylock, a drug sample that had been obtained from Martinez. Analysis showed the sample to be methamphetamine, a controlled drug.

On June 15, 1981, agent Childers met with Martinez at Blaylock's apartment to purchase methamphetamine. Childers field tested the one-half ounce of substance produced by Martinez and determined that it contained methamphetamine. He paid Martinez $600 for the drug. Martinez stated that he had obtained the drug from a chemist, appellant, who had manufactured the previous drug sample and had used the same chemical process for both. Martinez advised Childers that he could buy larger quantities of "meth" if he was satisfied with the quality, but that the chemist needed to procure laboratory equipment from Texas to make larger quantities.

Appellant met with agent Childers, Blaylock and Martinez at a Tucson restaurant on June 19, 1981. Appellant confirmed that he had made the previous samples of "meth" by the same crude process, by extraction from Vicks inhalers, and that he could produce a much better quality "meth" if he got into full-scale operation. Appellant explained how he intended to produce a pound of "meth" using a "modified Leukhardt reaction." Agent Childers expressed an interest in financing appellant's operation, but required that he first discuss the process telephonically with Childers' chemist, Zajac, who, unknown to appellant, was a special agent with the Drug Enforcement Administration and a chemist. After his discussion with appellant, Zajac advised agent Childers that certain chemicals appellant intended to use were highly explosive and would create a public danger. It was therefore decided to ask appellant to manufacture a pound of "meth" by his crude process. The request was relayed to appellant through Blaylock.

Blaylock, agent Childers and agent Victor Cortez, posing as one who had a buyer for

the "meth," dropped in on appellant on June 29, 1981, to see how the drug manufacturing was progressing. Appellant showed them two plastic bags and stated that they contained what he had made so far. The agents ran field tests on samples from each bag. The first tested poorly, but the reaction to the second was better. Appellant said he would have the full pound made by the next day. The following afternoon, Blaylock and agents Childers and Cortez went to appellant's apartment. Martinez and appellant were there. Appellant gave Childers a manila envelope and said "here is your pound of methamphetamine." Childers inspected the contents and confirmed that the envelope contained a package of white powder wrapped in clear plastic. Appellant said the price was $24,-000. Martinez and agent Cortez left with the package, purportedly to deliver it to the phantom buyer. Blaylock and agent Childers remained with appellant and discussed how the $24,000 would be divided. In approximately a half hour, agent Cortez returned with several other agents and arrested appellant.

Chemical analysis revealed that the substances purchased from Martinez on June 15, 1981, and the one pound package appellant delivered on June 30, 1981, were not methamphetamine, but were propylhexedrine and theophylline, respectively, both non-controlled substances.

Appellant first contends that the trial court's refusal to allow him to impeach the credibility of the informant, Blaylock, violated the Sixth Amendment to the United States Constitution and Rule 404 of the Arizona Rules of Evidence. He points out that to establish the elements of fraudulent scheme and artifice against him, the prosecution introduced into evidence a note written by Blaylock, purportedly copied verbatim by him from a note furnished to Martinez by appellant. Martinez had given the note to Blaylock at the time of the first drug transaction, but would not let Blaylock keep it. The state's position is that appellant's participation in the scheme began in the note with his false promise to produce "meth." Appellant contends the

note deviated from his note given to Blaylock which he recalled as saying the substance given to Blaylock was propylhexedrine and not as powerful as "meth." The note read:

"This is not meth made by complete synthesis of base chemicals. It is produced from a fully saturated analog of meth (going in reverse.) It is less potent and has a slight burn as it is a hydrocloric salt. It is too much trouble to produce small amounts of meth, by complete synthesis so I did it this way. Needless to say, it is far easier to get pure no-burn meth by complete synthesis. If you would like about an ounce or so, I'll see what I can do. [Emphasis added to depict alleged discrepancies]

Appellant contends the underlined portions were additions made by Blaylock. The parties on appeal do not address the substance of the purported additions, rather the focus is on the limitation of cross-examination of Blaylock. Defense counsel attempted to impeach Blaylock's credibility by cross-examining him concerning his stealing a birth certificate, possession of a false birth certificate, having a false passport, and use of heroin before June of 1981. The trial court denied the request as "too cumbersome." Appellant contends that the court's ruling violated his right to confrontation and in particular Rule 608(b), Arizona Rules of Evidence:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness . . ."

As stated in the rule, whether to allow impeachment of a witness with specific misconduct not resulting in a felony conviction is within the discretion of the trial court. The court's conclusion that forays into collateral matters, although perhaps relevant to test a witness' credibility, was "too cumbersome" expresses a sound

reason for vesting such discretion in courts. The trial court's responsibility to keep cross-examination on track and to not permit the trial to become bogged down in collateral matters was commented upon by the Arizona Supreme Court in *State v. Evans,* 120 Ariz. 158, 584 P.2d 1149 (1978). Moreover, the amorphous predicate for the defense proposal to further cross-examine is unpersuasive in that it appeared to be based on defense counsel's surmise. M. Udall and J. Livermore, Arizona Practice Law of Evidence, § 48, at 95 (2nd ed. 1982).

Appellant next contends that the "organizer, negotiator and dealer" in the "scheme" was Philip Martinez, an individual he had met approximately one week prior to the first negotiations. Martinez was absent from the trial and did not testify. Statements of Martinez were used by the state to show that the quality of the second drug sample was represented to be the same as the first, which was "meth," and that both came from the same source. Martinez' statements linked appellant to representations of the quality of the drug and identified him as the source. Appellant denied making the "meth" in the first sample and argues that he could not have since he lacked the necessary ingredients and that the state chemists confirmed this. Since he was unable to cross-examine Martinez about his statements, appellant contends that admission of the statements constituted reversible error.

The trial court admitted Martinez' out-of-court statements on the basis that appellant and Martinez were co-conspirators rendering the statements admissible pursuant to Rule 801(d)(2)(E) of the Arizona Rules of Evidence; *State v. Politte and Zucker,* 136 Ariz. 117, 664 P.2d 661 (Ariz. App.1982), finding that there was a prima facie showing of a conspiracy and that appellant's right to confrontation was not violated because the statements were reliable. Appellant contends that the trial court erred as to the quantum of evidence necessary to find a conspiracy and in its application of that standard to the conspiracy in question. It is argued that a preponderance of the evidence standard should have been used, rather than a prima facie evidence standard. It has been noted that "[w]ith little exception, the courts in criminal cases which have considered the question have held or recognized that the independent evidence must establish a prima facie case of conspiracy." Annot., 46 A.L.R.3d 1148 at 1161. Arizona subscribes to this view. *State v. Ferrari,* 112 Ariz. 324, 541 P.2d 921 (1975). Although proof of the existence of the conspiracy need not precede proof of the declarations of co-conspirators, *State v. Speerschneider,* 25 Ariz.App. 340, 543 P.2d 461 (1975), independent evidence of the conspiracy was given by agent Childers. We find that the statements of the co-conspirator were properly admitted, *State v. Politte and Zucker,* supra.

Affirmed.

LAWRENCE HOWARD, C.J., and BEN C. BIRDSALL, J., concur.