NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MANUEL CONTRERAS VILLELA, *Appellant.*

No. 1 CA-CR 15-0103
FILED 5-10-2016

Appeal from the Superior Court in Maricopa County
No. CR2013-432174-001
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

The Heath Law Firm, PLLC, Mesa
By Mark Heath
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Patricia A. Norris joined.

---

**P O R T L E Y**, Judge:

**¶1**        Defendant Manuel Contreras Villela challenges his combined sentence for armed robbery, kidnapping, aggravated assault, conspiracy to commit burglary, theft of means of transportation, and misconduct involving weapons.  He argues the combined sentence constitutes cruel and unusual punishment in violation of the federal and Arizona constitutions and, alternatively, argues the court should exercise its statutory right to reduce his sentences.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**        Villela orchestrated the armed robbery of a GameStop with his friend, Herbert Branch ("Branch"), and his brother-in-law, Dalon Bolden ("Bolden"), on July 9, 2013.  Specifically, he told Branch and Bolden about the plan; gave Bolden a gun; drove Branch and Bolden to a store, where they shoplifted screwdrivers which they used to steal a parked vehicle to serve as the get-away car.

**¶3**        When their plan to rob the first GameStop store failed because Bolden "got scared," the group instead agreed to meet at a different GameStop, and, while Villela waited in his wife's car, Branch and Bolden went into the store.  Branch pulled out the gun, pointed it at the employees, and told the customers to move to the back of the store and hand over their possessions, while Bolden gathered merchandise, money from the register, and personal property from the store patrons and employees.  They then ran out of the store carrying the bags of stolen property to the getaway car.

**¶4**        The stolen get-away car failed to start, and the duo started running with the stolen property.  Villela saw them and picked them up behind a Walmart.  Noticing that a police cruiser had started following

---

[1] We view the facts "in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant."  *State v. Rienhardt*, 190 Ariz. 579, 588-89, 951 P.2d 454, 463-64 (1997).

them, Villela stopped the car in an alley, and he, and the others, got out of the car and ran in different directions. They were subsequently caught and taken into custody.

**¶5** Villela was indicted for six counts of armed robbery, seven counts of kidnapping, seven counts of aggravated assault, conspiracy to commit burglary, car theft (collectively the "substantive offenses"), and misconduct involving weapons. The indictment also alleged all the substantive offenses were dangerous because a gun was used, and alleged four offenses were dangerous crimes against children under the age of fifteen. The State also alleged he had two historical prior felony convictions and other aggravating circumstances.[2] Villela turned down two different plea offers, went to trial, testified, and the jury found him guilty on all counts, but did not find the car theft to be a dangerous offense. The jury also found a number of aggravating factors for each substantive offense, and found the four offenses against two children were dangerous crimes against children.

**¶6** At the sentencing hearing, after the presentation of evidence, the court found Villela had a prior felony conviction. Villela was then sentenced to terms which totaled 81 years in prison, and given 97 days of presentence incarceration credit. We have jurisdiction over his appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1), 13–4031, and –4033(A).[3]

## DISCUSSION

**¶7** Villela argues the sentences for his convictions are excessive under the federal and Arizona constitutional proscriptions against cruel and unusual punishment. He also argues that even if we find the sentences constitutional, we should exercise our discretion under A.R.S. § 13-4037(B) to reduce his sentences to the minimum of 47 years.

---

[2] The charging decision is within the sole discretion of the County Attorney's office. *State v. Hankins*, 141 Ariz. 217, 221, 686 P.2d 740, 744 (1984).
[3] We cite the current version of the applicable statutes unless otherwise noted.

I.      **Cruel and Unusual Punishment**

A.  **Proportionality Review**

¶8          Villela argues his "[f]our flat, consecutive sentences" violate the Eighth Amendment prohibition of cruel and unusual punishment.[4]  We disagree.

¶9          Although, as a general rule, we do not consider constitutional issues raised for the first time on appeal, *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13, 13 P.3d 763, 768 (App. 2000), we may address those issues that do not "turn on resolution of disputed facts," are "of statewide importance . . . raised in the context of a fully developed record," and have been "fully briefed by the parties." *Larsen v. Nissan Motor Corp. in U.S.A.*, 194 Ariz. 142, 147, ¶ 12, 978 P.2d 119, 124 (App. 1998) (citations omitted).  Given that both parties have fully briefed the issues, and fundamental rights are implicated, we exercise our discretion to address these arguments.  *See State v. Politte*, 136 Ariz. 117, 123, 664 P.2d 661, 667 (App. 1982) (addressing issue raised for first time on appeal when it involved "substantial rights of a fundamental nature . . . which could have resulted in severe prejudice to the appellant.").

¶10          We review constitutional issues de novo.  *Fragoso v. Fell*, 210 Ariz. 427, 432, ¶ 13, 111 P.3d 1027, 1032 (App. 2005).  Both the Eighth Amendment to the United States Constitution and Article 2, Section 15, of the Arizona constitution prohibit the infliction of "cruel and unusual" punishment.  U.S. Const. amend. VIII; Ariz. Const. art. 2, § 15.[5]  The prohibition proscribes sentences that are disproportionate to the crime committed.  *Ewing v. California*, 538 U.S. 11, 20 (2003).  If a crime and the

---

[4] Villela also argues that the lower sentences his co-defendants received after accepting plea offers are indicative of injustice.  Villela, however, was offered and rejected a plea of 17 years flat-time after a *Donald* hearing.  *State v. Donald*, 198 Ariz. 406, 10 P.3d 1193 (App. 2000).  He also rejected the State's revised plea offer of 10.5 years to 15.75 years, requiring him to serve 85 percent of the sentence, after a *Donald* advisement, and stated that he understood the potential penalties.  Because he took the risk of a very lengthy sentence by rejecting the plea offers, he cannot assert that his aggregate sentence, when compared to his co-defendants', is indicative of injustice.

[5] We interpret Arizona's cruel-and-unusual-punishment constitutional provision like the federal constitutional provision.  *See State v. Davis*, 206 Ariz. 377, 381, ¶ 12, 79 P.3d 64, 68 (2003).

sentence imposed appear to be grossly disproportionate, the court "must carefully examine the facts of the case and the circumstances of the offender to see whether the sentence is cruel and unusual." *State v. Davis*, 206 Ariz. 377, 384, ¶ 34, 79 P.3d 64, 71 (2003); *see Ewing*, 538 U.S. 11; *Lockyer v. Andrade*, 538 U.S. 63 (2003). The court must assess:

> (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Solem v. Helm*, 463 U.S. 277, 292 (1983).

## 1. Gross Disproportionality

¶11 The threshold inquiry is whether a comparison of the crime to the sentence imposed demonstrates an appearance of gross disproportionality. *Ewing*, 538 U.S. at 30 (citation omitted); *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991). A sentence will not be found to be disproportionate merely because it "seems too long." *Davis*, 206 Ariz. at 388, ¶ 49, 79 P.3d at 75. Our supreme court has held that because Eighth Amendment analysis focuses on the sentence imposed for each specific crime, and not on the cumulative sentence:

> [I]f the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate. This proposition holds true even if a defendant faces a total sentence exceeding a normal life expectancy as a result of consecutive sentences.

*State v. Berger*, 212 Ariz. 473, 479, ¶ 28, 134 P.3d 378, 384 (2006) (citations omitted).

¶12 We find no appearance of gross disproportionality. Villela is an adult with two prior felony convictions, one for burglary, and was not found to lack normal intelligence. He planned and arranged for his co-defendants to rob a game-store during the afternoon, a time when children would be expected to be in or entering the store. He was a prohibited possessor and gave his accomplices a handgun, with bullets in the chamber and magazine, which they used to threaten the store's employees and

patrons, which included two children.[6]  He also stole a car so that his co-defendants could make their getaway, which may have occurred but for the fact that the stolen car would not run, forcing Villela to pick up his co-defendants.  Although the crimes presented a danger to store employees and patrons, the trial court was troubled that the aggregate sentence it was required to impose was "clearly excessive."  There is no evidence, however, that the individual sentences for each offense were excessive.  The trial court, given the aggravating factors, sentenced Villela to a term slightly greater than the presumptive sentence on all but two of the offenses, and none of the individual sentences imposed were independently disproportionate to the crimes charged even though the aggregate sentence was 81 years.

**¶13**        Although Villela relies on *Davis*, it is distinguishable.  In *Davis*, the defendant was charged and convicted of four counts of sexual misconduct with a minor, all dangerous crimes against children, and sentenced to four flat, consecutive thirteen-year sentences.  *Davis*, 206 Ariz. at 380, ¶¶ 7, 9, 11, 79 P.3d at 67.  Our supreme court found the sentences grossly disproportionate to the offenses, noting:  1) Davis's sexual conduct with the girls was consensual and involved neither threatened nor actual violence, 2) he had no adult criminal record and had not committed any previous crimes against children, 3) post-pubescent sexual conduct was common, 4) his intelligence and maturity were below that of a normal young adult, and 5) he had been caught up in the broad sweep of the statute which criminalized the "benign boyfriend-girlfriend situation in which one party is older than eighteen and the other younger than fifteen," with rape-incest and pedophilia.  *Id.* at 384-85, ¶ 36, 79 P.3d at 71-72.

---

[6] Villela contends that because he merely assisted in and encouraged a robbery during which nobody was injured, his sentence is unconstitutional.  However, one of the youngsters testified that as she entered the store approximately five minutes before the robbery, she saw Bolden and Branch outside the store talking to a third man.  And there was testimony that the child-victims were emotionally traumatized by the experience.  Regardless of whether Villela was unaware that children were inside the store, he, as an accomplice to the offenses committed by his co-defendants, is still be liable for dangerous crimes against children.  *See State v. Gurrola*, 219 Ariz. 438, 440, ¶ 8, 199 P.3d 693, 695 (App. 2008) (stating that requirement that conduct be focused against child may be fulfilled by reckless conduct, where conduct "manifests a conscious disregard of a risk to children, as opposed to the general public, even if harm to a child was not intended.") (internal quotes and citations omitted).

¶14        Under A.R.S. § 13-705(D), a defendant convicted of a dangerous crime against children involving aggravated assault or kidnapping shall be sentenced to a minimum prison term of 10 years, a presumptive term of 17 years, or a maximum term of 24 years.  If more than once victim was involved, the sentences must be "consecutive to any other sentence imposed on the person at any time."  A.R.S. § 13-705(M).

¶15        Villela was sentenced to terms only slightly above the presumptive, including 17.5 years for each of the four dangerous crimes against children, which were consecutive to the concurrent prison terms for the other convictions.   His sentences to "a term greater than the presumptive" were intended "to hold [him] accountable for his criminal conduct, enhance public safety, and deter any future criminal behavior," and were within the sentencing scheme set by the Arizona Legislature.  *See Ewing*, 538 U.S. at 29-30 (giving deference to legislative judgment that defendants who commit serious felonies and continue to do so should be incapacitated, and noting state has legitimate "public-safety interest in incapacitating and deterring recidivist felons"); *Berger*, 212 Ariz. at 476, ¶ 13, 134 P.3d at 381 ("courts must accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences"); *Davis*, 206 Ariz. at 388, ¶ 47, 79 P.3d at 75 (recognizing legislature's right to impose "a thirteen-year minimum sentence for dangerous crimes against children, require that the sentences be served completely," and "require consecutive sentences for this type of offense").

¶16        In light of the specific facts leading to the sentences, we do not find any of the individual sentences, or the aggregate sentence, "so severe as to shock the conscience of society."  *See Davis*, 206 Ariz. at 388, ¶ 49, 79 P.3d at 75 (citing *State v. Davis (Randal)*, 108 Ariz. 335, 337, 498 P.2d 202, 204 (1972)).  Consequently, we find that Villela's sentences, individually and collectively, were not disproportionate to the crimes he was convicted of committing, and do not violate the Eighth Amendment or Arizona constitutional prohibitions against cruel and unusual punishment.[7]

## II.    Reduction of Sentence under A.R.S. § 13-4037(B)

¶17        Villela urges this court to exercise its authority to reduce his sentence upon appeal, pursuant to A.R.S. § 13-4037(B).  Because, however, this statutory power must be exercised with great caution, *State v. Fillmore*,

---

[7] Because we find no inference of gross disproportionality, we need not proceed to the intra-jurisdictional or inter-jurisdictional assessments.  *See Davis*, 206 Ariz. at 385, ¶ 38, 79 P.3d at 72.

187 Ariz. 174, 185, 927 P.2d 1303, 1314 (App. 1996) (citation omitted), even if we have the statutory authority, we decline to exercise that authority to reduce the aggregate sentence.

**CONCLUSION**

**¶18**     For the foregoing reasons, we affirm Villela's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama