641 P.2d 1293

STATE of Arizona, Appellee,

v.

Felton HALE, Appellant.

No. 1 CA–CR 4153.

Court of Appeals of Arizona,
Division 1, Department B.

April 14, 1981.

Rehearing Denied May 12, 1981.

Review Granted June 2, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Lynn Hamilton, Asst. Atty. Gen., Phoenix, for appellee.

Kemper & Henze by James Hamilton Kemper and Don Bennett Moon, Phoenix, for appellant.

OPINION

HAIRE, Presiding Judge.

On April 6, 1979, appellant was found guilty of three counts of conspiracy, in violation of A.R.S. §§ 13–331, subd. A, 13–332, 13–1647 and 36–1002.02, subd. A, and one count of possession for sale of narcotic drugs having a value of not less than $250 in violation of A.R.S. § 36–1002.01, subds. A and D and § 36–1002.10.[1] He was sentenced to terms of 5 to 10 years imprisonment on each count with the sentences to run concurrently. In this appeal, appellant presents a two-pronged attack upon the trial court's order refusing to suppress evidence obtained from a court-ordered wiretap of his telephone. First, he contends that the affidavit in support of the wiretap was based upon stale information, and second, that it did not show the necessity

1. Unless otherwise indicated, all references are to Arizona's Criminal Code prior to its 1978 revision.

for a wiretap as opposed to less intrusive investigative techniques.

Upon application of the county attorney supported by an affidavit of investigating officer Robert Johnson, a Maricopa County superior court judge authorized a wiretap of appellant's home telephone pursuant to A.R.S. § 13–1057. The wiretap began the following day, January 26, 1977, and continued until February 8, 1977, when the appellant was arrested on the instant charges. Three confidential informants supplied the facts set forth in Officer Johnson's affidavit upon which he concluded that appellant was dealing in narcotics and that there was probable cause to believe that evidence of the crimes could be obtained by the use of wiretapping.

The affidavit contained the following allegations concerning information gained from the confidential informants. Two of the informants stated they had purchased heroin from Glenn and Ricky Hale (appellant's sons) in the "past several months" or the "past few months" and that contact was made by calling them at appellant's home phone number where arrangements would be made to meet the caller at a location designated by the caller. The third informant claimed to have known Ricky Hale for approximately two years and "during this time he has known Ricky Hale to sell heroin and has done so in his presence." Two of the informants gave statements that appellant was also a dealer in heroin. The affidavit, however, did not contain an allegation that either informant had personally seen these transactions, and it did not give a time frame within which these transactions occurred. In addition, the informants said that when Glenn and Ricky Hale were transacting heroin sales, they would carry the narcotics in balloons in their mouth, a method described by officer Johnson as one used by heroin users to avoid detection and to destroy evidence if confronted by the police. One of the informants also stated that Glenn Hale was dealing heroin to approximately 30 people on a daily basis. Again, no time frame was given in the affidavit nor was it alleged that the informant personally observed these transac-

tions. Finally, one informant's claim that Glenn Hale purchased his heroin from a man known as "Tubbs" at the corner of 24th Street and Broadway in Phoenix was partially corroborated by information from the Phoenix Police Department narcotics detail, which also had information that a man named "Tubbs" was a heroin dealer in that area.

As to independent evidence gathered by the police, the affidavit stated that physical surveillance of appellant and his three sons during November 1976 led to the arrest of Ricky Hale on November 20, 1976, for attempting to sell four balloons of heroin. The police also determined that Glenn, Ricky and appellant Felton Hale all lived at the same house and that the telephone number used by the informants to call the Hales was registered to appellant.

■ In support of his staleness argument, appellant focuses on the statements by the informants that the sales were made to them during the "past several months" or "past few months". When the time span specified is indefinite, for the purpose of determining whether the information was stale we must assume that the observations occurred at the most remote date within the time span. *United States v. Dauphinee*, 538 F.2d 1 (1st Cir. 1976); *State v. Tella*, 113 R.I. 303, 321 A.2d 87 (1974). Appellant urges that because of the staleness, the facts alleged do not supply adequate underlying circumstances to support probable cause as required by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In response, the State cites *State v. Smith*, 122 Ariz. 58, 593 P.2d 281 (1979), and *State v. Torrez*, 112 Ariz. 525, 544 P.2d 207 (1975), cert. denied, 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 767 (1976), for the proposition that when there is a continuity of criminal activity, well entrenched in the community, the passage of time becomes less significant and that here, the fact that appellant and his sons had been dealing with narcotics during the time frame described, was suffi-

cient to establish probable cause to believe the crimes were still being committed.

As is true with any search warrant, A.R.S. § 13–1057, subd. A requires that before an ex parte order for wiretapping may be issued, there must be a showing that there is "probable cause to believe that a crime has been, is being or is about to be committed, and there is probable cause to believe that evidence of such crime may be obtained by wiretapping or eavesdropping." One of the factors to be considered in determining probable cause is whether the facts given in support of the warrant are so remote in time in relation to when the warrant was sought, that there is no longer probable cause to believe that the crime is being committed or that evidence of the crime could then be found. In short, the facts must give reasonable grounds to believe that the search will yield the fruit sought. *See Durham v. United States*, 403 F.2d 190 (9th Cir. 1968); *State v. Smith, supra.* However, staleness cannot be measured merely by dates and must be measured in view of the nature of the criminal activity and the evidence being sought. *State v. Torrez, supra; United States v. Harris*, 482 F.2d 1115 (3rd Cir. 1973). Here, other than reference to appellant and his sons dealing in drugs in the "past several months" or "past few months", the only evidence offered was the arrest of Ricky Hale on November 20, 1976, for attempting to sell heroin and the fact that sometime after this arrest, appellant told one of the informants that he could not sell to him for a few days because he was "hot," and was apparently aware of police surveillance. Thus, the most recent factual circumstance supporting the application for the wiretap on January 25, 1977, appears to have occurred some two months earlier in late November 1976. There is absolutely no allegation in the affidavit that the Hales were involved in dealing in narcotics at any time after November 20, 1976. Furthermore it does not appear from the face of the affidavit that there was any investigation attempted once physical surveillance was halted after the No-

vember arrest. Under these circumstances, although there is certainly an inference that appellant and his sons would have continued their illicit activity at some time in the future, there was not probable cause to believe that at the time the warrant issued on January 25, 1977, they were then engaged in this activity or that their telephone conversations would reveal evidence of that activity.

Appellant additionally argues that the affidavit failed to show that a wiretap was necessary as a substitute for traditional investigative techniques. Although it appears to have merit, we need not rule on this contention. As indicated above, the staleness of the factual information set forth in the affidavit precluded a lawful determination of the existence of the probable cause which is essential to the issuance of a constitutionally valid wiretap order. Because of this constitutional infirmity, federal decisions require the exclusion of the evidence obtained as a result of the wiretap order, notwithstanding the good faith of the officers involved. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Therefore appellant's motion to suppress should have been granted.

The judgments and sentences appealed from are set aside, and this matter is remanded for a new trial with all evidence obtained as a result of the wiretap order issued on January 25, 1977, being suppressed.

JACOBSON and EUBANK, JJ., concur.