641 P.2d 1288

**STATE of Arizona, Appellee,**

v.

**Felton HALE, Appellant.**

**No. 5317–PR.**

Supreme Court of Arizona,
En Banc.

Feb. 22, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Lynn Hamilton, Diane M. Ramsey, Phoenix, for appellee.

Kemper & Henze by James Hamilton Kemper, Don Bennett Moon, Phoenix, for appellant.

HOLOHAN, Chief Justice.

The defendant, Felton Hale, was convicted of three counts of conspiracy and one count of possession of heroin for sale with a value of not less than $250, in violation of former A.R.S. § 13–331(A) and A.R.S. § 36–1002.01(A) and (D). He was sentenced to serve four concurrent terms of five to ten years each in the Arizona State Prison. The defendant appealed, challenging the trial court's refusal to suppress evidence obtained from a court-ordered wiretap of his telephone. The court of appeals reversed the conviction and remanded the case for a new trial with directions that all evidence obtained as a result of the wiretap be suppressed. *State v. Hale*, 1 CA–CR 4153 (1981), 131 Ariz. 449, 641 P.2d 1293. We granted the state's petition for review. The opinion of the court of appeals is vacated. The judgments and sentences of the trial court are affirmed.

Two questions are presented for determination. Was the affidavit in support of the wiretap based upon stale information, thus precluding a finding of present probable cause? Did the affidavit contain a sufficient statement that other investigative procedures had been tried and failed or that they reasonably appeared to be unlikely to succeed?

The facts essential for review are that on January 25, 1977 a wiretap of the defendant's home was authorized pursuant to former A.R.S. § 13–1057. The application for the wiretap was supported by the affidavit of investigating officer Robert Johnson. Some of the information supplied by the affidavit was obtained from confidential informants whose reliability had been previously demonstrated. The affidavit states that two of the informants stated that they had purchased heroin from members of the defendant's household several times during the "past several months" or "past few months." They stated that the usual transaction proceeded as follows: the informant/buyer ordered heroin by telephone; then a member of defendant's household delivered the heroin to a mutual-

ly satisfactory location where the buy took place. One informant stated that defendant's son sold heroin to approximately 30 people a day, the transactions being initiated largely by telephone call to the defendant's home. Another informant stated that he had known the defendant for about two years and during that time the defendant was selling heroin.

The affidavit also relates that physical surveillance of the defendant and his sons led to the arrest of one of his sons on November 20, 1976 for attempting to sell heroin. After the arrest, physical surveillance was again attempted. The defendant thereupon called the Phoenix Police Department and asked why the police were following his family. One of the informants stated that at that time the defendant told the informant to discontinue buying from him "for a few days" since he and his family were "hot."

Appellant contends that a lawful determination that probable cause existed is precluded because the factual information set forth in the affidavit was stale. We disagree.

The law is well settled that probable cause to justify the issuance of a search warrant must exist at the time the warrant is issued. *State v. Kasold*, 110 Ariz. 563, 521 P.2d 995 (1974); *United States v. Harris*, 482 F.2d 1115 (3rd Cir. 1973). Nonetheless, there is no arbitrary time limit on how old the factual information contained in an affidavit may be. *E.g., State v. Kasold, supra; United States v. Guinn*, 454 F.2d 29 (5th Cir. 1972), *cert. denied*, 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972). The question of staleness depends more on the nature of the activity than on the number of days that have elapsed since the factual information was gathered. *E.g., State v. Smith*, 122 Ariz. 58, 593 P.2d 281 (1979); *State v. Torrez*, 112 Ariz. 525, 544 P.2d 207 (1975), *cert. denied*, 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 767 (1976); *United States v. Weinrich*, 586 F.2d 481 (5th Cir. 1978), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).

Probable cause ceases to exist when it is no longer reasonable to presume that the wiretap will turn up evidence of unlawful activity. *See United States v. Brinklow*, 560 F.2d 1003 (10th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978). Out-of-date information about a single event must be seen to describe no more than an isolated transaction in the past. Such information establishes no probable cause to believe that similar conduct is presently occuring. However, where the information evidences activity of a continuous nature the passage of time becomes less significant. *E.g., State v. Torrez, supra; United States v. Huberts*, 637 F.2d 630 (9th Cir. 1980), *cert. denied*, 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981).

An affidavit in support of a search warrant or wiretap order must be interpreted in a commonsense and realistic, rather than a hypertechnical, manner. *State v. Torrez, supra; State v. Sanchez*, 124 Ariz. 505, 605 P.2d 907 (App.1979). A commonsense reading of Officer Johnson's affidavit clearly shows sufficient facts upon which the issuing judge could have based a determination of probable cause. This is so even though, given the most remote interpretation of the time frame, as long as two months elapsed between the time factual information was obtained and the time the wiretap was sought.

Protracted and continuous illegal activity is inherent in a large-scale narcotics operation. *United States v. Harris, supra*. The affidavit in question demonstrates that the defendant's and his son's activities were so continuous and long-standing in nature that they justify a finding of probable cause at the time the wiretap was obtained. The affidavit indicated that drug buys from defendant and his sons were initiated by calling the telephone number listed to defendant. One son sold heroin daily to approximately 30 people, and the other son had been selling drugs over a period of two years. Furthermore, the defendant's intention to continue conducting illegal activities is manifest from his warning to the infor-

mant to "wait a few days" before resuming heroin purchases until the "heat" was off. Common sense leads to the conclusion that in late November 1976 the defendant and his sons were involved in an ongoing business venture which they did not intend to curtail in the near future. Under these circumstances we hold that the facts set forth in the affidavit were not stale.

The next question is whether the affidavit contained a sufficient statement of necessity for the wiretap. Former A.R.S. § 13–1057(B)(3), which was identical to 18 U.S.C. § 2518(1)(c), required that an application for wiretap include:

A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

█ The necessity requirement is designed to assure that the highly intrusive wiretap is not used in situations where conventional investigative techniques would be adequate to uncover the crime. *United States v. Bailey*, 607 F.2d 237 (9th Cir. 1979), *cert. denied sub. nom. Whitney v. United States*, 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980). Thus, wiretaps are not to be used routinely as the first step in criminal investigations. *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). Nonetheless, the necessity requirement is to be interpreted in a commonsense fashion with an eye toward the practicalities of investigative work. *United States v. Martinez*, 588 F.2d 1227 (9th Cir. 1978); *United States v. Landmesser*, 553 F.2d 17 (6th Cir. 1977), *cert. denied*, 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977); *United States v. Kalustian*, 529 F.2d 585 (9th Cir. 1975). Thus, a wiretap need not be used only as a last resort. *United States v. Daly*, 535 F.2d 434 (8th Cir. 1976); *United States v. Smith*, 519 F.2d 516 (9th Cir. 1975). "The statute does not mandate the 'indiscriminate pursuit to the bitter end of every nonelectronic device . . . to a point where the investigation becomes redundant or impractical'. (citation omitted)" *United States v. Bailey, supra* at 242, (interpreting the identical federal statute).

█ As in other suppression matters, considerable discretion rests with the judge to whom application is made. *E.g., United States v. Martin*, 599 F.2d 880 (9th Cir. 1979); *United States v. Sandoval*, 550 F.2d 427 (9th Cir. 1976), *cert. denied*, 434 U.S. 879, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977); *United States v. Daly, supra*. Of course, mere conclusory statements or boilerplate recitations of difficulties inherent in a given type of prosecution do not satisfy the necessity requirement. *United States v. Martinez, supra; United States v. Spagnuolo*, 549 F.2d 705 (9th Cir. 1977); *United States v. Kalustian, supra; United States v. Kerrigan*, 514 F.2d 35 (9th Cir. 1975), *cert. denied*, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975). To meet the necessity requirement, the affidavit must state facts from which the issuing judge can determine that in the particular investigation, traditional methods have been tried and failed or are unlikely to succeed.

In the instant case, the affidavit provides in part:

As has already been stated, individuals who deal with GLENN DURWIN HALE, RICKY JOE HALE, and FELTON HALE are unwilling to testify concerning any information about these individuals because of a fear of retaliation that may cause death or great bodily injury. Information they have is not complete enough to identify the individuals buying from and selling to GLENN, RICKY, and FELTON HALE.

Physical surveillance was attempted in November, 1976. This led to the arrest of RICKY JOE HALE on November 20, 1976. After the arrest, physical surveillance was again attempted. This resulted in FELTON HALE calling the Phoenix Police Department and asking why the police were following his family. Surveillance was then terminated. At this time, Source # 2 told me that FELTON HALE told Source # 2 to cease buying from him for a few days, since they were "hot", indicating he was aware of police surveillance.

Physical surveillance has been attempted and has not been successful in light of these individuals' careful and suspicious nature.

The use of undercover police officers to infiltrate this organization is not possible, since GLENN, RICKY, and FELTON HALE deal only with people personally known to them.

The use of a search warrant for narcotics or dangerous drugs is likewise impractical, since there is no way to determine how much, if any, narcotics or dangerous drugs is (*sic*) in the house, and it would also frustrate efforts to identify buyers and suppliers.

■ We hold that Officer Johnson's affidavit fully complies with the necessity requirement of former A.R.S. § 13–1057(B)(3).

The order authorizing the wiretap was proper, and the evidence obtained was legally admissible.

A review of the record disclosed no fundamental error, and the appellant's convictions are affirmed.

GORDON, V. C. J., and HAYS, CAMERON and FELDMAN, JJ., concur.